**IZAAK WALTON LEAGUE OF AMERICA, Petitioner,**

v.

**LAKE COUNTY PROPERTY TAX ASSESSMENT BOARD OF APPEALS, Respondent.**

No. 49T10–0703–TA–12.

Tax Court of Indiana.

March 4, 2008.

Louis M. Casale, Mindy J. Heidel, Casale, Woodward & Buls, LLP, Merrillville, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Kevin D. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

The Izaak Walton League of America (IWL) appeals the final determination of the Indiana Board of Tax Review (Indiana Board) valuing its property for the 2000 assessment year (the year at issue). The issue on appeal is whether IWL's property is entitled to a charitable purposes exemption for the year at issue.

## FACTS AND PROCEDURAL HISTORY

IWL is a not-for-profit corporation dedicated to the preservation of natural resources within the United States and educating the public with respect to utilizing and enjoying those natural resources. During the year at issue, IWL owned and maintained approximately 30 acres (comprised of 13 separate parcels) of wetlands and water in Lake County, Indiana (the

subject property).[1] There are no improvements on the subject property nor does IWL intend to ever erect any improvements thereon.

On May 5, 2000, IWL applied for a property tax exemption on the subject property with the Lake County Property Tax Assessment Board of Appeals (PTABOA). On July 26, 2004, the PTABOA denied IWL's request for exemption.

On August 27, 2004, IWL appealed the PTABOA's decision to the Indiana Board. On October 23, 2006, the Indiana Board conducted a hearing on IWL's appeal. On January 23, 2007, the Indiana Board issued a final determination upholding the PTABOA's decision.

On March 6, 2007, IWL initiated an original tax appeal. The Court heard the parties' oral arguments on December 14, 2007. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Wittenberg Lutheran Vill. Endowment Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals*, 782 N.E.2d 483, 486 (Ind. Tax Ct.2003), *review denied.* Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of

---

1. The subject property is part of a larger, 50–acre tract owned by IWL. IWL sought, and received, an exemption on the other 20 acres

of land for the year at issue. Consequently, those other 20 acres are not part of this appeal.

statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2008). The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003).

## ANALYSIS

IWL claims that the subject property is entitled to a charitable purposes exemption for the year at issue. To support its claim, IWL has presented two arguments. First, it argues that the subject property is entitled to the exemption pursuant to Indiana Code § 6–1.1–10–16(c)(3). In the alternative, IWL argues that the subject property is entitled to the exemption on equitable grounds.

In Indiana, all tangible property is subject to taxation. *See* IND.CODE ANN. § 6–1.1–2–1 (West 2008). Nevertheless, the Indiana Constitution provides that "[t]he General Assembly may exempt from property taxation any property ... being used for municipal, educational, literary, scientific, religious, or charitable purposes." IND. CONST. art. X, § 1(a)(1). Pursuant to this grant of authority, the legislature enacted Indiana Code § 6–1.1–10–16. During the year at issue, this statute provided in pertinent part:

(a) All or part of a building is exempt from property taxation if it is owned, occupied, and used ... for educational, literary, scientific, religious, or charitable purposes.

\* \* \* \* \* \*

(d) A [vacant] tract of land is exempt from property taxation if:

(1) it is purchased for the purpose of erecting a building which is to be owned, occupied, and used in such a manner that the building will be exempt under subsection (a)[;]

(2) the tract does not exceed [ ] fifty (50) acres in the case of[ ] an educational institution[ ] or ... fifteen (15) acres in all other cases; and

(3) not more than three (3) years after the property is purchased, and for each year after the three (3) year period, the owner demonstrates substantial progress towards the erection of the intended building and use of the tract for the exempt purpose.

IND.CODE ANN. § 6–1.1–10–16(a),(d) (West 2000). In 2003, however, the legislature amended the statute by adding a provision that exempted land "owned by a nonprofit entity established for the purpose of retaining and preserving land and water for their natural characteristics [provided the land] does not exceed five hundred (500) acres[ ] and is not used by the nonprofit entity to make a profit." *Id.* at (c)(3) (West 2003) (eff.7–1–03).

1.

Both the PTABOA and the Indiana Board, in denying the exemption on the subject property for the year at issue, relied on the 2000 version of the statute. Consequently, given the fact that IWL did not intend to build on the subject property, they determined that, for the year at issue, the subject property did not meet the specific terms of the exemption as provided in Indiana Code § 6–1.1–10–16(d)(3). *(See, e.g.,* Cert. Admin. R. at 403.) IWL argues, on the other hand, that they should have applied the 2003 version of the statute because "[w]hen the decision was made [by the PTABOA in 2004] to deny [IWL's]

exemptions, th[at version] of the statute was in place and controlling." (Cert. Admin. R. at 835.) *(See also* Pet'r Br. at 18–19; Oral Argument Tr. at 8.) As a result, IWL asserts that it was clearly entitled to the exemption provided for in Indiana Code § 6–1.1–10–16(c)(3): 1) it was a nonprofit entity established for the purpose of retaining and preserving land and water for their natural characteristics; 2) the subject property did not exceed 500 acres; and 3) it did not use the property to make a profit. IWL is incorrect.

◼◼◼◼ Statutes and statutory amendments are to be given prospective effect only, unless the legislature has unambiguously and unequivocally intended retroactive effect as well. *Indiana Dep't of State Revenue, Inheritance Tax Div. v. Estate of Riggs,* 735 N.E.2d 340, 344 (Ind. Tax Ct.2000) (quotation marks and citation omitted). As the party claiming the exemption in this case, IWL therefore bears the burden of showing that the legislature intended the 2003 statute to be applied retroactively. *See State Bd. of Tax Comm'rs v. New Castle Lodge # 147, Loyal Order of Moose, Inc.,* 765 N.E.2d 1257, 1259 (Ind.2002) (stating that a taxpayer bears the burden of proving that it is entitled to the exemption it seeks). IWL argues that the legislature's intent to make the 2003 version of the statute retroactive to 2000 is embodied in a non-code section

of the Indiana Code.[2],[3] *(See* Pet'r Reply Br. at 1–3 (footnotes added).) That non-code section, enacted in 2005, provided in relevant part:

(a) The definitions in IC 6–1.1–1 apply throughout this SECTION.

(b) For purposes of this SECTION, "eligible entity" means a nonprofit entity established for the purpose of retaining and preserving land and water for their natural characteristics.

(c) An eligible entity may file an application under IC 6–1.1–11 before August 1, 2005, for exemption of one (1) or more parcels of real property for property taxes first due and payable in 2001 and 2002 if:

(1) the eligible entity filed an application under any statute for exemption of the real property with respect to property taxes first due and payable in 2001 and 2002; and

(2) it is determined that the real property would have been eligible for exemption from property taxes for property taxes first due and payable in 2001 and 2002 if IC 6–1.1–10–16(c)(3) had been in effect for those years.

(d) If an eligible entity files an exemption application under subsection (c):

(1) the exemption application is subject to review and action by:

---

**2.** During the Indiana Board hearing in this matter, IWL did not present an argument that the legislature intended the 2003 version of the statute to be retroactive. *(See* Cert. Admin. R. at 860–948.) As a general rule, when a taxpayer fails to raise an issue or present an argument at the administrative level, the issue is waived and may not be considered by this Court on appeal. *Inland Steel Co. v. State Bd. of Tax Comm'rs,* 739 N.E.2d 201, 220 (Ind. Tax Ct.2000), *review denied.* Nevertheless, the certified administrative record reveals that the PTABOA did reference the applicability of the non-code

section during the Indiana Board hearing. *(See* Cert. Admin. R. at 877, 926.) Consequently, the Court will address IWL's argument on its merits.

**3.** "A 'non-code' section is one which, though enacted with a piece of legislation, is not codified within the Indiana Code. Such 'non-code' provisions ... are appropriately considered by a court when interpreting [] statute[s]." *Sullivan v. Day,* 661 N.E.2d 848, 851 n. 3 (Ind.Ct.App.1996), *vacated in part on other grounds by* 681 N.E.2d 713 (Ind.1997).

(A) the county property tax assessment board of appeals; and

(B) the department of local government finance; and

(2) the exemption determination made under subdivision (1) is subject to appeal; in the same manner that applies to other exemption applications.

\*    \*    \*    \*    \*    \*

(g) This SECTION expires January 1, 2006.

2005 Ind. Acts 228, § 38.

■ This non-code section indeed evidences the legislature's intent to provide taxpayers, exempt under the 2003 version of the statute, an opportunity to "roll-back" the exemption to the 2000 tax year. Nevertheless, this non-code section also evidences the legislature's intent that certain requirements be met in order to take advantage of that opportunity. IWL claims it has met these requirements: 1) it is an "eligible entity" pursuant to section (b) of the non-code provision; and 2) pursuant to section (c) of the non-code provision, it filed its exemption application (as well as a petition for review thereon) well before the August 1, 2005 deadline (i.e., on May 5, 2000 and August 27, 2004, respectively). (See Oral Argument Tr. at 10–11 (where IWL claims by meeting these requirements, it followed the terms of the non-code provision "to the letter").) IWL, however, has misinterpreted section (c).

Section (c) provides that if an "eligible entity" filed an application for exemption for tax year 2000 and 2001, it could file *another* application, before August 1, 2005, seeking the exemption for 2000 and 2001 as if Indiana Code 6–1.1–10–16(c)(3) had been in effect during that time. IWL has not presented any evidence demonstrating that it filed a second application pursuant to section (c) of the non-code provision. (*Cf.* Cert. Admin. R. at 412–856 (evidence submitted by IWL at the Indiana Board hearing) *with* Cert. Admin. R. at 877, 926 (representative from PTABOA indicating that PTABOA never received the second application from IWL).) Because IWL did not comply with the terms of the non-code provision, it has waived its right to obtain the exemption thereunder for the year at issue. *See* IND.CODE ANN. § 6–1.1–11–1 (West 2000) (stating that if a taxpayer does not comply with the statutory procedures for obtaining an exemption, the exemption is waived and the property is subject to taxation).

2.

In the alternative, IWL argues that the subject property is entitled to the exemption on equitable grounds. More specifically, IWL argues that because the subject property actually received an exemption from 1990 through 1999, the denial of the exemption for 2000 is barred by the doctrines of legislative acquiescence, equitable estoppel, or laches. (*See* Pet'r Br. at 5–15.) Again, the Court must disagree.[4]

a. Legislative Acquiescence

■ A court will apply the doctrine of legislative acquiescence when: 1) there is a longstanding administrative interpretation of ambiguous statutory language 2) to which the legislature is presumed to have acquiesced because it has not made a subsequent change to that statutory lan-

---

4. The Court notes that IWL's arguments regarding legislative acquiescence, equitable estoppel, and laches were raised during the Indiana Board hearing, *at best*, by implication. (*See, e.g.,* Cert. Admin. R. at 837, 842 (IWL's post-hearing briefs which merely state that it "relied upon the previous decisions allowing th[e] exemptions" and it "was led to believe it would have this [continued] exemption").)

guage.[5] *See Indiana State Bd. of Tax Comm'rs v. Fraternal Order of Eagles, Lodge No. 255*, 521 N.E.2d 678, 679–81 (Ind.1988) (footnote added).

■ Even assuming the language in the 2000 version of Indiana Code § 6–1.1–10–16 was ambiguous,[6] the non-code section specifically required a taxpayer like IWL to reapply for exemption. Given that IWL did not reapply for the exemption under the non-code section, IWL does not succeed on its legislative acquiescence argument. IWL is therefore not entitled to the exemption for the year at issue on the basis of legislative acquiescence.

### b. Equitable Estoppel

■ Equitable estoppel is a doctrine by which a person may be precluded—by his act or conduct, or silence when it is his duty to speak—from asserting a right that he otherwise would have had. *Hi–Way Dispatch, Inc. v. Indiana Dep't of State Revenue*, 756 N.E.2d 587, 598 (Ind. Tax Ct.2001). As this Court has previously explained:

> The elements of equitable estoppel are: (1) a representation or concealment of material fact; (2) made by a person with knowledge of the fact and with the intention the other party act upon it; (3) to a party ignorant of the fact; (4) which induces the other party to rely or act upon it to his detriment.
>
> Equitable estoppel cannot ordinarily be applied against government entities. The reason for this general rule

is twofold. If the government could be estopped, then dishonest, incompetent or negligent public officials could damage the interests of the public. At the same time, if the government were bound by its employees' unauthorized representations, then government itself, could be precluded from functioning.

> However, application of the doctrine against the government is not absolutely prohibited. The exception to the general rule exists where the public interest would be threatened by the government's conduct.

*Id.* at 598–99 (internal citations, quotation marks, and footnote omitted). Thus, in order to succeed on its equitable estoppel claim, IWL must not only demonstrate how the elements of estoppel are met, but offer a public policy reason favoring estoppel sufficient to counter and outweigh the general rule as well. *See id.* at 599.

■ In this case, IWL has done neither. Rather, IWL simply makes statements in its written brief that "the public policy reason is the public benefit[,]" "[IWL] clearly acted to its determinant [*sic.*,]" "the ... actions [of the Indiana Board and the PTABOA] would clearly threaten the public interest[,]" and "[d]enying the exemptions have harmed and will threaten the public interest in receiving the charitable and educational services provided by [IWL]." (*See* Pet'r Br. at 12–13.) Such statements do little to show how the elements of estoppel have been met or

---

5. Stated differently, legislative acquiescence may be applied "when the legislature is apprised of the [administrative] interpretation of the ambiguous [statutory] language and does nothing. When this occurs, the [administrative] interpretation stands until the legislature acts to the contrary." *Indiana State Bd. of Tax Comm'rs v. Fraternal Order of Eagles,*

*Lodge No. 255*, 521 N.E.2d 678, 681 (Ind. 1988).

6. In other words, the fact that the exemption as contained in the 2003 version of the statute was made retroactive via the non-code provision may indicate that the legislature intended entities like IWL to be exempt under the 2000 version of the statute.

how the application of equitable estoppel against the PTABOA would serve the public interest. Accordingly, IWL is not entitled to the exemption for the year at issue on the basis of equitable estoppel.

### c. Laches

"Laches" is an equitable defense that may be raised to stop another person from asserting a claim he would normally be entitled to assert. *Hunt v. Indiana Dep't of State Revenue,* 790 N.E.2d 630, 633 (Ind. Tax Ct.2003), *review denied.* "The rationale behind the doctrine of laches is that a person who, for an unreasonable length of time, has neglected to assert a claim against another waives the right to assert his claim when his delay prejudices the person against whom he would assert it." *Id.* (citation omitted). "Before a court will bar a claim due to laches, it must find the presence of three elements: 1) inexcusable delay in asserting a right, 2) an implied waiver arising from knowing acquiescence in existing conditions, and 3) circumstances resulting in prejudice to the adverse party." *Id.*

In essence, IWL argues that because the PTABOA should have denied the exemption prior to 2000, it has waived its right to deny the exemption now for the year at issue. (*See* Pet'r Br. at 14.) The Indiana Supreme Court has, however, already rejected such an argument: "[t]he taxing authorities of the state ... could not by failing to do their duty, or by any act or failure to act, waive the right and the duty of the state to assess and collect taxes for the years following." *Walgreen Co. v. Gross Income Tax Div.,* 225 Ind. 418, 75 N.E.2d 784, 787 (1947). Accordingly, IWL is not entitled to the exemption for the year at issue on the basis of laches.

### CONCLUSION

For the foregoing reasons, IWL has not shown that the subject property was entitled to a charitable purposes exemption for the year at issue. The Court therefore AFFIRMS the Indiana Board's final determination.