**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cruz v. Testa,* **Slip Opinion No. 2015-Ohio-3292.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3292

CRUZ, APPELLANT, *v*. TESTA, TAX COMMR., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cruz v. Testa,* **Slip Opinion No. 2015-Ohio-3292.]**

*R.C. 5739.33—Delinquent-sales-tax assessments—When an assessment made against a responsible person under R.C. 5739.33 is predicated on an earlier assessment against the corporation itself, the person may contest the assessment against her personally by challenging the service of the corporate assessment on the corporation.*

(No. 2014-0513—Submitted March 24, 2015—Decided August 19, 2015.)

APPEAL from the Board of Tax Appeals, No. 2013-1010.

_____

**Per Curiam.**

{¶ 1} In this appeal, appellant, Susan C. Cruz, contests 27 assessments of delinquent sales tax that, when added to preassessment interest, penalty, and additional charges, amounted to over $599,000. Cruz's liability derives from previous assessments issued against Cruz-Samsa Corporation, a pet-store business

of which Cruz was co-owner and an officer. We confront a jurisdictional issue and an issue on the merits.

{¶ 2} With regard to the jurisdictional issue, appellee, the tax commissioner, argues that this appeal must be dismissed on the grounds that Cruz failed to set forth an error, as required by R.C. 5717.04, that would confer jurisdiction over the appeal. We disagree, and we therefore deny the motion to dismiss.

{¶ 3} On the merits, Cruz argues that she may contest the validity of the service of the assessments *against the corporation* as a defense against her derivative liability. We agree with this contention, and our review of the record demonstrates completed service of seven of the 27 assessments against the corporation. We therefore affirm the BTA's decision to uphold the seven assessments as to which completed service has been shown.

{¶ 4} As to the other 20 assessments, we conclude that additional fact-finding is necessary. We therefore vacate the BTA's decision with regard to those 20 assessments and remand the cause with instructions that the BTA take additional evidence and determine whether service of those 20 assessments was perfected on the corporation.

## FACTUAL AND PROCEDURAL BACKGROUND

*The assessments against the corporation and against Cruz personally*

{¶ 5} Before the court are 27 assessments against Susan C. Cruz, issued pursuant to R.C. 5739.33, as a person who is responsible for the sales-tax obligation of Cruz-Samsa Corporation, which did business as a Petland store in Cleveland Heights. The periods at issue extend from late 2007 through the first half of 2010. As a retail vendor, Cruz-Samsa Corporation applied in November 2005 for a vendor's license under the sales-tax law, with a view to making sales beginning January 20, 2006. R.C. 5739.17.

**{¶ 6}** The application identified Susan Cruz as president and Mark Samsa as vice president and gave four addresses as follows:

- A corporate headquarters address: 2504 Lee Road, Cleveland Heights (which is the same address listed as the residential address of Susan Cruz on her 2006 federal tax return);

- A business location for making retail sales: 2255 Lee Road, Cleveland Heights;

- An address for the corporation's president, Susan Cruz: 2141 Lee Road, Cleveland Heights; and

- An address for the corporation's vice president, Mark Samsa: 228 Paxton Road, Eastlake.

Cruz was the majority shareholder of the corporation.

**{¶ 7}** The record indicates that the tax commissioner issued 27 assessments against the corporation. It is clear from the record that seven of the assessments were successfully delivered by certified mail to the headquarters address. Because the assessment notices are not in the record, the dates they were issued are not clearly established. But the evidence relating to the seven notices that were successfully delivered by certified mail show mailing dates ranging from July 11, 2008, to October 9, 2009. The evidence also shows the attempted service of all 27 assessments on Cruz-Samsa Corporation, using either the headquarters or the business-location address.

**{¶ 8}** The 27 assessments are for the following periods: one assessment for October 2007, one assessment for December 2007, one assessment for each of the 12 months of 2008, one assessment for each of the 12 months of 2009, and a single assessment covering the first six months of 2010.

**{¶ 9}** Although the record does not contain the assessment notices against the corporation, the tax commissioner did certify as part of the statutory transcript

printouts from the tax department's "Proof of Delivery" computerized system. Those printouts indicate successful certified-mail delivery of seven of the 27 assessments, with the other 20 marked either "unclaimed," "returned," "refused," or "NoFinlEvnt." Two addresses were used in mailing the assessment notices: the 2504 Lee Road address, which was listed on the vendor's-license application as the corporate headquarters address; and the 2255 Lee Road address, which was listed on the vendor's-license application as the place of retail business for the corporation. Additionally, both Cruz's appointment as statutory agent for Cruz-Samsa Corporation and her joint federal income-tax return for 2006 give 2504 Lee Road as her address.

{¶ 10} During March 2012, the tax commissioner issued the 27 assessments against Susan Cruz personally at the 2504 Lee Road address; according to the accompanying cover letters, the assessments against Cruz were originally sent by certified mail but in each case the tax commissioner followed up with ordinary mail when the certified mail was unsuccessful. The cover letters sent by ordinary mail are dated May 2012.

{¶ 11} On July 12, 2012, Cruz filed her petitions for reassessment, specifying two bases for contesting the assessments: first, Cruz was "not a party responsible for filing returns for, or paying sales tax" for the corporation; second, "[t]here was no valid assessment against the corporation for failure of service."

{¶ 12} In an accompanying memorandum, Cruz explained that she was not a proper person to assess because she did not control or supervise the fiscal function relating to the filing of sales-tax returns; indeed, that function belonged to the corporation's vice president and minority shareholder, Mark Samsa. As for service, the memorandum explicitly argued that because the corporation was never served with an assessment, Cruz's own liability was precluded.

{¶ 13} Attached to the memorandum was Cruz's affidavit, in which she testified that she is the "former president and majority shareholder of Cruz-Samsa

4

Corporation dba Petland of the Heights from 2006 through 2009"; that she was not an employee and drew no wages; and that she had no responsibilities relating to the corporation's tax compliance. According to the affidavit, Mark Samsa, the vice president and minority shareholder "was originally responsible for maintaining the corporate accounts and filing and paying the taxes of the corporation." Subsequently, "on or before December 31, 2007," according to the affidavit, Samsa resigned his corporate responsibilities. The affidavit recites Samsa's assertion that he had trained "another person" in keeping the accounts and submitting sales-tax returns, but the affidavit asserts that that other person was not Cruz.

{¶ 14} Finally, the affidavit makes the following two averments concerning the service of the corporate assessments:

Statement 1: "As a statutory agent for Cruz-Samsa Corporation, Affiant never received either a certified mailing nor an ordinary post mailing of any assessment against Cruz-Samsa Corporation."

Statement 2: "Affiant received over a score of regular post mailings addressed to Affiant personally from the Department subsequent to August, 2011."

*The tax commissioner's determination and the BTA's decision*

{¶ 15} The tax commissioner issued his final determination on the petitions for reassessment on December 28, 2012. He found that as 66 percent owner of the company and as corporate president with the power to hire and fire, Cruz "had the authority to control fiscal responsibilities" of the corporation. Citing *Spithogianis v. Limbach*, 53 Ohio St.3d 55, 559 N.E.2d 449 (1990), the determination recites that "R.C. 5739.33 does not permit officers, otherwise responsible for fiscal responsibilities, to escape liability by delegating those duties to others."

**{¶ 16}** Turning to the service issue, the tax commissioner held that a challenge to the service on the corporation was barred by *Rowland v. Collins*, 48 Ohio St.2d 311, 358 N.E.2d 582 (1976).

**{¶ 17}** Cruz appealed to the BTA, asserting both issues in her notice of appeal. The BTA held a hearing on February 3, 2014, at which counsel representing Cruz and the tax commissioner appeared and presented arguments. The BTA issued its decision on March 7, 2014, affirming the commissioner's determination upholding the assessments against Cruz. As for the service issue (which is the only issue on appeal to this court) the BTA disposed of it in a footnote reading as follows:

> [Cruz] also asserted in her petitions that the underlying sales tax assessments against Cruz-Samsa Corp. were invalid due to lack of proper service on the corporation. In her memorandum in support of her petitions, she argued that service on the minority shareholder of the corporation (Mark Samsa) was improper, because she was the statutory agent for the corporation. The commissioner rejected the argument as not being properly raised; instead, he asserted that such argument should have been made in a proceeding challenging the underlying assessments themselves. We agree. Moreover, we find that service on Mr. Samsa was sufficient, as it was "reasonably calculated to give notice of the assessment and allow the taxpayer to present his objections."

(Citation omitted.) BTA No. 2013-1010, 2014 Ohio Tax LEXIS 1463, 3 (Mar. 7, 2014), fn. 1.

**THE MOTION TO DISMISS**

**{¶ 18}** The sixth paragraph of R.C. 5717.04 requires that a notice of appeal from a BTA decision to a court "set forth the decision of the board appealed from *and the errors therein complained of*." (Emphasis added.) The requirement that the errors be set forth in the notice of appeal is a jurisdictional prerequisite to the court's power to grant relief on a particular basis. *See Global Knowledge Training, L.L.C. v. Levin*, 127 Ohio St.3d 34, 2010-Ohio-4411, 936 N.E.2d 463, ¶ 22, and cases cited therein.

**{¶ 19}** The tax commissioner has filed a motion to dismiss, asserting two reasons why Cruz's notice of appeal to the court is so deficient in specifying error that it fails to invoke the court's jurisdiction at all. We disagree.

*Cruz properly preserved her argument that a failure of service on the corporation invalidates the assessments against her personally*

**{¶ 20}** The tax commissioner first argues that the case should be dismissed because the sole error set forth in the notice of appeal to this court "fails to assert any error regarding the actual controversy that was at issue at the Board of Tax Appeals, i.e., the 27 *personal responsibility* assessments that the Commissioner issued to Ms. Cruz." (Emphasis sic.) The commissioner highlights the language in the notice of appeal stating that the issue is whether Cruz "can challenge the assessment against the corporation." Because the notice of appeal does not say in so many words that Cruz's issue ultimately relates to her challenge to the assessments against her personally, she supposedly "fail[ed] to assert any error regarding the actual controversy" over the personal assessments against her.

**{¶ 21}** This argument reflects a cramped reading of the notice of appeal, which has given rise to the kind of hypertechnical jurisdictional objection that we have rejected in the past. When we evaluate a notice of appeal either to the BTA or to this court, we do not "judge[ ] the sufficiency of assignments of error * * * merely by their form of words," but instead, we insist that those words "be read in

the context of the particular case in which [they] are used." *WCI Steel, Inc. v. Testa*, 129 Ohio St.3d 256, 2011-Ohio-3280, 951 N.E.2d 421, ¶ 36. In *WCI Steel*, we reasoned further that a notice of appeal to the BTA from a determination of the tax commissioner should therefore "be read in light of the objections and evidence that were presented to the commissioner." *Id.*

**{¶ 22}** Applying *WCI Steel* here, we read Cruz's notice of appeal to this court in light of the objections and evidence Cruz presented to the BTA (which had also previously been advanced before the tax commissioner). At the BTA, Cruz argued in her notice of appeal as follows:

> In order for Cruz to be held personally responsible for an uncontested assessment by the corporation, there must have been statutorily sufficient service of an assessment upon the corporation.

**{¶ 23}** Cruz then proceeded to argue before the BTA that the corporation had not been served as statutorily required and as required by due process. The BTA explicitly acknowledged this argument (albeit in a manner less fully articulated than the manner in which Cruz had advanced it) in its footnote 1, which we have already quoted. That footnote, in turn, referred to the portion of the tax commissioner's final determination that reads as follows:

> [Cruz] also argues that assessment [sic] against the company is invalid due to lack of service against the company. This is an attacked [sic] on the validity of the underlying corporate assessments. Under *Rowland v. Collins* (1976), 48 Ohio St.2d 311 [358 N.E.2d 582] the objection cannot be considered. The petitioner may not challenge the merits of the assessment against

the corporation in a proceeding under R.C. 5739.33. The objection is denied.

{¶ 24} In sum, a review of the arguments raised below shows that Cruz raised her lack-of-service-on-the-corporation argument at each level,[1] and both the tax commissioner and the BTA determined that the argument was barred by *Rowland,* 48 Ohio St.2d 311, 358 N.E.2d 582. Moreover, when read in that context, the error set forth in Cruz's notice of appeal to this court does suffice to put the court and the commissioner on notice of what error Cruz is asserting that the BTA made. We therefore reject this argument as a basis for dismissing the appeal.

*Cruz did not need to challenge the BTA's hypothetical regarding service on Samsa in order to pursue her appeal*

{¶ 25} The tax commissioner also argues for dismissal on account of Cruz's failure to contest the BTA's purported "determin[ation] that the Commissioner, in fact, had effectuated valid service of the corporate assessments issued to [Cruz-Samsa Corporation]." Notably, the commissioner himself offers only an interpolated quotation of the BTA's finding in this regard; a review of the full language of the BTA's finding shows that the commissioner is mistaken:

> Moreover, we find that service on Mr. Samsa was sufficient, as it was "reasonably calculated to give notice of the assessment and allow the taxpayer to present his objections." *Castellano v. Kosydar* (1975), 42 Ohio St.2d 107, 110 [326 N.E.2d 686].

---

[1] The tax commissioner also argues that Cruz's failure to raise the service issue during *the collection proceedings* constitutes a waiver in this case. But there are two rights at issue: *the corporation's* service defense, and *Cruz's* corporate-service defense. Waiver of the former does not entail waiver of the latter.

BTA No. 2013-1010, 2014 Ohio Tax LEXIS 1463, at 1, fn. 1.

{¶ 26} The tax commissioner understandably seeks to construe this as a finding that the corporation was properly served with the assessments against the corporation itself. But *this statement is not a finding of fact based on the record of the case*; it is instead a legal ruling based on purely hypothetical facts.

{¶ 27} That is so because, looking at the record before us, we conclude that the corporate assessments were never served, nor attempted to be served, *on Mr. Samsa*, either personally or as a representative of the corporation. The record documents a total of four addresses on the vendor's-license application: (1) the address of the corporate headquarters, (2) the address of the corporate place of business, (3) a personal address for Cruz, and (4) a personal address for Samsa. The assessments against the corporation were sent to one of two addresses: the headquarters address or the place-of-business address. Neither of the two personal addresses was used. Thus, the record supports a finding that the tax commissioner attempted service on the corporation at the two business addresses; on the other hand, absolutely nothing in the record supports the theory that there was service on Samsa.

{¶ 28} The BTA apparently derived the idea that there was "service on Mr. Samsa" from Cruz's memorandum submitted to the tax commissioner, which did mention service on Samsa.[2] But the statement was in the nature of errant speculation by Cruz about what addresses the commissioner might have used for serving notice of the corporate assessments. At the time she submitted her

---

[2] Cruz referred in her memorandum to service of "a subsequent judgment lien arising out of a sales tax liability against Cruz-Samsa Corporation, *for a month not here at issue*, by an action in aid of execution." (Emphasis added.) It was this lien filing that that was apparently served on Samsa, not the corporate assessments themselves. In the memorandum, Cruz was apparently speculating that the tax commissioner might have attempted service on the corporation in the same manner and arguing that such service would be insufficient. But since the record shows that the commissioner attempted service at the corporation's business addresses (one of which is Cruz's residential address) and not by serving Samsa, Cruz's reference in her memorandum to service on Samsa is irrelevant.

memorandum, Cruz apparently lacked access to the documentation that was later included in the record by the tax commissioner after Cruz appealed to the BTA—documentation that showed the attempted service on the corporation at its business addresses.

{¶ 29} As a result, Cruz's statement in her memorandum to the tax commissioner was not a factual assertion, much less evidence, of how the service of the corporate assessments had in fact been attempted. And as a further result, the BTA's reference to "service on Mr. Samsa" cannot be construed as a finding of fact, but instead constitutes a hypothetical legal ruling based on facts not in the record—the BTA is in essence saying that, *if* the commissioner had attempted service on the corporation by serving Samsa (of which there is no evidence here), that service would be valid against the corporation.

{¶ 30} When she appealed to this court, Cruz was entitled to ignore the statement because of its purely hypothetical character. Because it is not necessary for the court to reverse this "ruling" that was based on hypothetical facts in order for Cruz to prevail on the appeal, the point is essentially moot.

{¶ 31} For his contrary view, the tax commissioner relies on *Lenart v. Lindley*, 61 Ohio St.2d 110, 399 N.E.2d 1222 (1980), and *Ellwood Engineered Castings Co. v. Zaino*, 98 Ohio St.3d 424, 2003-Ohio-1812, 786 N.E.2d 458, for the proposition that "the failure to specify as error a finding * * * which was the basis of * * * [the] determination jurisdictionally precludes * * * consider[ation of] that finding [on appeal]." (Emphasis deleted.) This doctrine does not apply for two reasons. First, as just discussed, the BTA's statement regarding service on Samsa is not a finding, but a hypothetical legal ruling that Cruz was entitled to ignore. Second, *Ellwood Engineered Castings* requires specifying a finding as error only when that finding was the "basis" for the "determination" below, *id.* at ¶ 21; in the present case, the basis for the BTA's rejection of the service argument was not the statement about "service on Mr. Samsa," but the BTA's agreement

with the tax commissioner's determination that contesting service on the corporation was barred by *Rowland*.

**{¶ 32}** For the above reasons, we also reject this argument for dismissing the appeal. Thus, having rejected both of the tax commissioner's arguments for dismissing the appeal, we deny his motion to dismiss.

### FAILURE OF SERVICE OF THE CORPORATE ASSESSMENT INVALIDATES A DERIVATIVE ASSESSMENT UNDER R.C. 5739.33

**{¶ 33}** R.C. 5739.13 authorizes assessment of unpaid sales tax against vendors and consumers, and when the assessed entity is a corporation, R.C. 5739.33 authorizes assessment against "any of its employees having control or supervision of or charged with the responsibility of filing returns and making payments, or any of its officers, members, managers, or trustees who are responsible for the execution of the corporation's * * * fiscal responsibilities." Cruz was assessed pursuant to R.C. 5739.33 for liabilities incurred by the Cruz-Samsa Corporation.

### Rowland v. Collins *makes a validly served corporate assessment substantively binding on a later-served responsible person*

**{¶ 34}** In *Rowland*, 48 Ohio St.2d 311, 358 N.E.2d 582, the tax commissioner issued personal-responsibility assessments under the authority of R.C. 5739.33 on officers of Allied Highway Equipment, Inc. Allied was a vendor that collected sales tax and had allegedly failed to collect and remit tax on certain transactions. The corporate assessments concerned transactions that Allied claimed to be exempt from sales tax, but it had failed to produce exemption certificates from its purchasers with respect to those transactions.

**{¶ 35}** When they were later assessed, the officers defended by asserting that the transactions were in fact exempt; the tax commissioner rejected this argument by observing that the assessments were final as against the corporation. The BTA reversed the commissioner's determination on two grounds. The one

relevant here is its holding that because R.C. 5739.13 (the sales-tax-assessment statute) afforded the assessee the opportunity to challenge the assessment in a hearing before the tax commissioner and because Albert Rowland had no control over the corporation at the time the tax commissioner's assessment was made, Rowland had to be afforded the opportunity to argue that the assessment was substantively erroneous. *Rowland v. Collins*, BTA No. D-121 (May 21, 1976), at 14-15.

{¶ 36} On appeal, we reversed the BTA on that point by observing that "appellee's liability for the overdue sales tax is derivative in nature." *Rowland* at 313. Because the "separate identities of corporation and officer are thus irrelevant in this context," we concluded that "[o]nce the assessment against the corporation becomes conclusive by the failure to present objections thereto the officer is bound by the oscitancy[3] of his corporation." *Id.* In other words, the officer cannot challenge the assessment on the grounds of substantive tax-law error when the corporation itself failed to do so; the only substantive argument the officer has against the assessment is to "assert that he is not one of the class of persons chargeable under R.C. 5739.33," i.e., not a responsible person under the statute. *Id.*

{¶ 37} In this case, however, the tax commissioner and the BTA have extended *Rowland* beyond the court's holding in that case: according to the tax authorities, *Rowland* also bars Cruz's argument that the corporation was not properly served with the assessments against it. It is that extension of *Rowland* that Cruz challenges in this appeal.

---

[3] By "oscitancy," the court refers to a party's having slept on its rights.

*Rowland*'s "oscitancy" doctrine and due process both require that Cruz be able
to challenge the service of the assessments on the corporation

**{¶ 38}** The analysis in support of Cruz's position is straightforward and simple. Cruz correctly states in her brief that a "[f]ailure to perfect service is not an objection implicating oscitancy. Failure to perfect service alleges one was never called upon to act." If the corporation was not properly served, then its omission to contest the assessments cannot be regarded as oscitant, i.e., the corporation did not sleep on its rights. The service defect means that the corporation was justified in ignoring the assessments, with the result that the corporation's failure to contest them cannot form the basis for imposing the obligation to pay on a person who is later assessed as a responsible person.

**{¶ 39}** This reasoning receives reinforcement from the constitutional guarantee of due process. Taxpayers cannot be subjected to monetary assessments unless they have notice and an opportunity to be heard. *See McKesson v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) ("Because exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause"); *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**{¶ 40}** By barring a substantive challenge to the assessment by the officer, *Rowland* imposes liability for the corporation's debts on the person who is assessed as a responsible person. If that doctrine is extended to bar a challenge to the validity of service on the corporation, then that liability is being imposed without *any* taxpayer having had the opportunity to be heard on the substantive issue of whether the corporate assessment is valid. That result would exceed the tolerances of due process.

**{¶ 41}** Consistent with this view is the doctrine that the service of a tax assessment may be challenged in a later collection proceeding. *See Ohio Dept. of*

14

*Taxation v. Plickert*, 128 Ohio App.3d 445, 450, 715 N.E.2d 239 (11th Dist.1998) (a trial court's general jurisdiction to entertain an affirmative defense includes the defense of insufficient service of the assessment, and "if the defense is good, judgment will be entered for the taxpayer"), citing *Hakim v. Kosydar*, 49 Ohio St.2d 161, 165, 359 N.E.2d 1371 (1977). Because the later assessment against the corporate officer is also derivative of the earlier assessment against the corporation, it stands to reason that insufficient service of the corporate assessment should be a defense against the personal-responsibility assessment.

{¶ 42} In light of the foregoing discussion, we hold that when an assessment made against a responsible person under R.C. 5739.33 is predicated on an earlier assessment against the corporation itself, the person may contest the assessment against her personally by challenging the service of the corporate assessment on the corporation. A successful challenge to the service on the corporation will invalidate the derivative-liability assessment against the responsible individual.[4] We therefore reverse the BTA's contrary ruling, and we now examine the extent to which the record establishes service on the corporation.

### THE RECORD SHOWS CERTIFIED-MAIL SERVICE OF SEVEN ASSESSMENTS BUT DOES NOT SHOW COMPLETED SERVICE OF THE OTHERS

{¶ 43} R.C. 5739.13(A) expressly provides that notice of a sales-tax assessment shall be given in the manner prescribed by R.C. 5703.37. As it currently reads, R.C. 5703.37 permits service of notices of assessment by personal service, certified mail, or authorized delivery service. As for the address to be

---

[4] Because the tax commissioner is the party in possession of the relevant information, he must bear the burden of producing evidence that service was perfected on the corporation when corporate service has been challenged by the assessee under R.C. 5739.33. *Accord FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, ¶ 25; *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 1, 2014-Ohio-853, 9 N.E.2d 920, ¶ 27-29.

used, the current version of the statute authorizes the commissioner to use a "last known address."

{¶ 44} Here, the tax commissioner used corporate headquarters and business addresses set forth on the vendor's-license application, and there is no reason to question the validity of those addresses. At the time the earlier corporate assessments were issued, the statute merely provided the alternative between personal service and certified-mail service, with no provisions addressing the follow-up action if the certified-mail service was not clearly perfected after its initial mailing. Former R.C. 5703.37, Sub.S.B. No. 200, 149 Ohio Laws, Part I, 1943, 1966, effective Sept. 6, 2002. But in 2009, the General Assembly added the explicit requirement of follow-up service by ordinary mail to R.C. 5703.37. 2009 Am.Sub.H.B. No. 1, effective Oct. 16, 2009.

{¶ 45} With respect to certified-mail service, the statute, since amended in 2009, provides two courses of action when the certified mailing is "returned." If the mailing is returned "because of an undeliverable address," the tax commissioner must attempt to locate a new address. If the mailing is returned "for some cause other than an undeliverable address," the tax commissioner must send the notice by ordinary mail to the same address, after which service is deemed complete, unless the ordinary mail is returned because of an undeliverable address.

{¶ 46} The record in this case documents successful certified-mail service as to the following corporate assessments:

(1) assessment No. 06200818377615, the corporate assessment for February 2008 (corresponding to Cruz assessment No. 06201205405368);

(2) assessment No. 06200827626866, the corporate assessment for May 2008 (corresponding to Cruz assessment No. 06201205405373);

(3) assessment No. 06200909798435, the corporate assessment for November 2008 (corresponding to Cruz assessment No. 06201205405403);

(4) assessment No. 06200912782801, the corporate assessment for December 2008 (corresponding to Cruz assessment No. 06201205405386);

(5) assessment No. 06200918226874, the corporate assessment for February 2009 (corresponding to Cruz assessment No. 06201205405391);

(6) assessment No. 06200923762494, the corporate assessment for March 2009 (corresponding to Cruz assessment No. 06201205405393); and

(7) assessment No. 06200927393628, the corporate assessment for April 2009 (corresponding to Cruz assessment No. 06201205405394).

**{¶ 47}** In the tax-department records, the remaining assessments are marked as one of the following: "returned," "unclaimed," "refused," or "NoFinlEvnt." There is no indication that the addresses ever proved to be undeliverable. There were only two addresses used, 2504 Lee Road and 2255 Lee Road. Among the seven corporate assessments for which service has been shown to have been perfected, the record demonstrates successful instances of service at 2504 Lee Road. Moreover, the record demonstrates perfected service of tax assessments—albeit ones that are not at issue in this case—on Cruz-Samsa Corporation at the 2255 Lee Road address.

**{¶ 48}** Thus, the remaining factual and legal issue is whether the tax commissioner can demonstrate perfected service of the other 20 corporate assessments at those addresses, given the language of R.C. 5703.37 that was in effect at the time the particular corporate assessment in question was issued and given the requirements of due process.[5] *See, e.g.*, *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006).

---

[5] Those assessments are (1) No. 06200806095852 (October 2007) (corresponding to Cruz assessment No. 06201205305282), (2) No. 06200812765205 (December 2007) (corresponding to Cruz assessment No. 06201205405365), (3) No. 06200816533974, (January 2008) (corresponding to Cruz assessment No. 06201205405366), (4) No. 06200821499467 (March 2008) (corresponding to Cruz assessment No. 06201205405369), (5) No. 06200824113899 (April 2008) (corresponding to Cruz assessment No. 06201205405371), (6) No. 06200830575615 (June 2008) (corresponding to Cruz assessment No. 06201205405375), (7) 06200834334123 (July 2008)

{¶ 49} In tax proceedings, proof of the service of important notices is usually included as part of the administrative record that is certified to the next tribunal on appeal. *See, e.g., Gaston v. Medina Cty. Bd. of Revision*, 133 Ohio St.3d 18, 2012-Ohio-3872, 975 N.E.2d 941, ¶ 12-16 (evaluating taxpayer's claim of lack of service in light of the statutory transcript certified by the board of revision); *Castellano v. Kosydar*, 42 Ohio St.2d 107, 326 N.E.2d 686 (1975) (same). In this case, the tax commissioner sensibly placed evidence of the certified-mail service of the corporate assessments into the record that it certified to the BTA pursuant to R.C. 5717.02. But the tax commissioner also has the burden of producing evidence of the follow-up service, to the extent that further action by the commissioner was required by statute and due process to perfect service as to the remaining 20 assessments in this case. The tax commissioner has offered assurances through counsel that ordinary-mail service was provided as a follow-up, but there is no evidence of that in the record.

## CONCLUSION

{¶ 50} For the foregoing reasons, we deny the tax commissioner's motion to dismiss, and we reverse the BTA's ruling that Cruz's service argument was barred by *Rowland,* 48 Ohio St.2d 311, 358 N.E.2d 582. We also affirm the BTA's decision to uphold seven of the assessments against Cruz as set forth

---

(corresponding to Cruz assessment No. 06201205405378), (8) No. 06200900265437 (August 2008) (corresponding to Cruz assessment No. 06201205405379), (9) No. 06200902949231 (September 2008) (corresponding to Cruz assessment No. 06201205405381), (10) No. 06200906276628 (October 2008) (corresponding to Cruz assessment No. 06201205405383), (11) No. 06201008515678 (November 2009) (corresponding to Cruz assessment No. 06201205405385), (12) No. 06200915311247 (January 2009) (corresponding to Cruz assessment No. 06201205405388), (13) No. 06200928713356 (May 2009) (corresponding to Cruz assessment No. 06201205405395), (14) No. 06200932192665 (June 2009) (corresponding to Cruz assessment No. 06201205405397), (15) No. 06200933525157 (July 2009) (corresponding to Cruz assessment No. 06201205405399), (16) No. 06200936351375 (August 2009) (corresponding to Cruz assessment No. 06201205405400), (17) No. 06201002862874 (September 2009) (corresponding to Cruz assessment No. 06201205405401), (18) No. 06201006392882 (October 2009) (corresponding to Cruz assessment No. 06201205405402), (19) No. 06201013496132 (December 2009) (corresponding to Cruz assessment No. 06201205405406), (20) No. 06201030663171 (January through June 2010) (corresponding to Cruz assessment No. 06201205405407).

above, and we vacate the decision and remand the cause as to the remaining 20 assessments for further proceedings in accordance with this opinion. Given the posture of this case, the only issue on remand is service of the corporate assessments, and the BTA may take additional evidence as it deems necessary in order to determine that issue. *See Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, ¶ 32 (when the Supreme Court clarifies the applicable law on appeal, the BTA is usually justified in taking additional evidence on remand). If service is found to have been completed on the corporation, the corresponding assessments against Cruz should be upheld; if service is found not to have been perfected, then the corresponding assessments should be canceled.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents.

_____

John Wood, for appellant.

Michael DeWine, Attorney General, and David D. Ebersole and Barton A. Hubbard, Assistant Attorneys General, for appellee.

_____